16458

STATE v. MIDDLETON

(63 S. E. (2d) 163)

*Messrs. L. A. Hutson, Jr.,* of Greenville, and *L. A. Hutson,* of Orangeburg, *for Appellant,*

*Mr. Julian S. Wolfe, Solicitor,* of Orangeburg, *for Respondent,*

January 30, 1951.

Oxner, Justice.

Appellant killed Leroy Brown about noon on February 16, 1950. She was tried at the May term of the Court of General Sessions for Orangeburg County and found guilty of manslaughter. A motion for a new trial was overruled and appellant was sentenced to imprisonment for a term of three years.

The first question for determination is whether the Court below erred in refusing a motion for a directed verdict of not guilty.

Appellant and her husband lived in a small three room house near the corporate limits of the City of Orangeburg. The deceased lived only a few blocks away. Just prior to the homicide, the deceased, appellant's husband and several other Negroes were engaged in playing cards in the yard of appellant's home. Her husband left. Shortly thereafter the others stopped playing and were asked to bring the chairs into the house. The deceased came into the kitchen and got into an argument with appellant. She says that he cursed her and she asked him to leave her house; that he refused to do so and knocked her down; that she walked into the adjoining room and was followed by the deceased who continued to curse her; that she again asked him to stop cursing and go home, whereupon he struck her a second time; that he then started toward her with his hands in his pockets, stating he was going to cut her throat; and that she seized a shotgun from behind the bed, loaded it, and shot him. The deceased died instantly. According to the State's testimony, he had no weapon of any kind, made no assault and was unnecessarily killed after being requested to leave appellant's house.

After a careful consideration of all the testimony, a detailed review of which is unnecessary, we are satisfied that there was no error in refusing appellant's motion for a directed

verdict of not guilty. The testimony presented sharp issues of fact which were properly submitted to the jury.

We now turn to appellant's contention that she was seriously prejudiced by certain proceedings had after the foreman stated that the jury was unable to agree.

The trial Judge gave the usual charge in homicide cases and fully covered the law of self-defense and the defense of one's habitation, which were the principal defenses relied on by appellant. After deliberating a while (the record does not show how long), the jury returned and requested the Court to again charge them on the law of self-defense. This was done and the jury again retired. About an hour later they returned and the foreman stated that they were "hopelessly disagreed." Thereupon the trial Judge stated to the jury that they had not deliberated a sufficient length of time to justify his discharging them and that he was "going back over some points of law involved in this case", and continued as follows:

"Could you tell me, Mr. Foreman, whether your question is in the degree of the offense, or whether it is that some of your members are considering both offenses or whether or not it is simply the question of some of you as to whether or not to find the defendant not guilty.

"The Foreman: Your Honor, what do you mean?

"The Court: Are some of your members of the opinion that the defendant should be found guilty of murder and some feel that the defendant should be found guilty of manslaughter and some think the defendant should be found not guilty?

"The Foreman: Nine are of the opinion of not guilty. Some of them are of the opinion that it should be manslaughter. That is as far as we have voted up to now.

"The Court: You are divided between acquittal and manslaughter?

"The Foreman: Three are in favor of manslaughter.

"The Court: Leaving out the charge of murder, I will review again some points. In order to convict a person of manslaughter the element of malice goes out of the case, and premeditation goes out of the picture. It is not necessary to show that a person deliberately, designedly or with premeditation fired the shot, because that goes out of the picture.

"Manslaughter is the unlawful killing of one person by another without malice. It is the felonious taking of human life, taking the life of another is sudden heat of passion and upon a sufficient legal provocation. In considering whether or not the State has made out—I withdraw that statment, Mr. Foreman and Gentlemen.

"There is no use charging you what the provocation must be because you are not considering a conviction of murder. That means that that question is not now proper.

"The Foreman: Those three that want a verdict in their favor, what is your opinion about that?

"The Court: I can't answer that. Three things must be shown in order to establish self-defense. First, that the defendant was without fault in bringing on the difficulty, and that is based on the requirement of the law of self-defense, as I explained to you a while ago, that a person could not, under the law, be permitted to provoke a difficulty, invade another's rights and when that provocation was resented take advantage of that opportunity to inflict serious bodily injury on the other person.

"I don't think that in passing upon the question of provoking a difficulty, I don't think the jury would be called upon to weigh the niceties of one's behavior to decide whether or not a person was polite to another person as he or she should have been, but it is a question as to whether or not it was something that was calculated, plainly calculated, to provoke one, and if such would be the case I don't think the defendant would be entitled to a plea of self-defense.

"On the other hand something in a person's conduct might arouse resentment in another, something slight, I don't think

that provocation in that manner would affect a defendant's right to rely on the plea of self-defense."

The Court then instructed the jury as to the other elements of self-defense, explained again the defense of one's habitation, and in appropriate language admonished the jurors to endeavor to harmonize their views and reach a verdict. After a brief deliberation, they were sent to a nearby restaurant for supper. In a short time after resuming their deliberations, they found the defendant guilty of manslaughter.

When a jury is unable to agree, it is proper for the Court tó recall them for the purpose of ascertaining whether such disagreement grows out of the facts or the law. If the former, the judge may inquire whether there is any reasonable probability of an agreement on the facts or whether the jury is hopelessly divided. It is also the duty of the trial judge to admonish the jury as to the desirability and importance of trying to reconcile their differences and agreeing upon a verdict. If any questions of law are disturbing the jury, the trial judge may give them further instructions. But it is improper to make the jury publicly reveal their standing in regard to the conviction or acquittal of the accused. *Burton v. U. S.,* 196 U. S. 283, 25 S. Ct. 243, 49 L. Ed. 482; *Brasfield v. U. S.,* 272 U. S. 448, 47 S. Ct. 135, 71 L. Ed. 345. In the last mentioned case, the Court said: "Such procedure serves no useful purpose that cannot be attained by questions not requiring the jury to reveal the nature or exent of its division. Its effect upon a divided jury will often depend upon circumstances which cannot properly be known to the trial judge or to the appellate courts and may vary widely in different situations, but in general its tendency is coercive. It can rarely be resorted to without bringing to bear in some degree, serious, although not measurable, an improper influence upon the jury, from whose deliberations every consideration other than that of the evidence and the law as expounded in a proper charge, should

be excluded. Such a practice, which is never useful and is generally harmful, is not to be sanctioned."

We think the learned trial Judge went too far in the instant case and inadvertently invaded the province of the jury. When the foreman reported that they were "hopelessly disagreed", the most extreme care and caution were necessary in order that the legal rights of the appellant should be preserved. We do not have a situation, as sometimes arises, where the foreman volunteers how the jury stands. Here the trial Judge required the jury to reveal precisely what offense they were considering and the nature and extent of their division. The Court thereupon, without request from the jury, recharged for the third time the law of self-defense and in doing so at one point came very close to charging on the facts. Shortly thereafter the jury, although previously standing nine to three in favor of acquittal, brought in a verdict of guilty of manslaughter. The case was close on the facts and we cannot escape the conclusion that the rights of appellant were seriously prejudiced.

There are several other exceptions but as they relate to matters that will not likely arise on another trial, they need not be determined.

Judgment reversed and case remanded for a new trial.

FISHBURNE, STUKES and TAYLOR, JJ., and L. D. LIDE, Acting Associate Justice, concur.