521 S.E.2d 500

**The STATE, Respondent,**

v.

**Mar–Reece Aldean HUGHES, Appellant.**

No. 25003.

Supreme Court of South Carolina.

Heard May 26, 1998.

Decided Oct. 4, 1999.

586

588

Stephen D. Schusterman, of Rock Hill; and Christina Chadwick Brice, of York, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, Assistant Attorney General Rob-

ert F. Daley, Jr., all of Columbia; and Solicitor Thomas E. Pope, of York, for respondent.

MOORE, Justice:

Appellant was sentenced to death for the murder of Officer Brent McCants who was killed during a routine traffic stop. We affirm.

## FACTS

On September 25, 1992, appellant and Eric Forney, armed with a gun, accosted two college students in the parking lot of a restaurant in Charlotte, North Carolina, and stole their car. The two men then drove to Rock Hill where Officer McCants stopped them for driving without headlights. McCants was shot several times and his police-issue walkie-talkie was taken from his belt as he lay on the side of the road. Appellant and Forney were apprehended shortly thereafter.

The State sought the death penalty against both appellant and Forney. They were tried separately. At his trial, Forney claimed appellant was the triggerman. Forney was convicted of murder, criminal conspiracy, and armed robbery and was acquitted of possession of a pistol during the commission of a violent crime. After the jury failed to return a unanimous verdict in the sentencing phase, he was sentenced to life imprisonment. This sentence was affirmed on appeal. *State v. Forney*, 321 S.C. 353, 468 S.E.2d 641 (1996).

At appellant's trial, appellant admitted he participated in the armed robbery of the vehicle and that he was driving at the time McCants stopped them, but claimed Forney shot McCants from the passenger seat and stole the officer's walkie-talkie. Appellant was convicted of murder, armed robbery, criminal conspiracy, possession of a stolen vehicle, and possession of a firearm during the commission of a crime. The jury found as an aggravating circumstance that the victim was a local law enforcement officer performing his official duties.

## DISCUSSION

### 1) Sentencing phase admission of jailhouse crimes

During the sentencing phase, evidence was admitted that while in prison awaiting trial for the murder of Officer

McCants, appellant killed a sleeping cellmate by stabbing him in the throat with a "shank." He was in the process of stabbing another cellmate when he was stopped by prison guards. These crimes occurred April 12, 1993.

In response to this evidence, appellant introduced expert testimony that he was mentally ill (paranoid schizophrenic) at the time. Appellant's expert testified appellant's actions on April 12th were not indicative of his character since he was mentally ill at the time. Further, there was evidence appellant had no further disciplinary problems once he was medicated for his mental illness. The trial judge charged the jury that the April 12th crimes should be considered only "as evidence of [appellant's] character, his characteristics, and/or his future dangerousness."

On appeal, appellant contends admission of the evidence regarding the April 12th crimes was improper because he was mentally ill at the time and therefore this evidence was not reliable character evidence.[1] We disagree.

First, there was no contemporaneous objection to the introduction of this evidence at the sentencing phase of trial. The trial judge ruled in limine that the evidence was admissible. An in limine ruling, however, is not final and does not preserve the issue for appeal. *State v. Schumpert*, 312 S.C. 502, 435 S.E.2d 859 (1993). Accordingly, this issue is not preserved.

In any event, it is well-settled evidence of the defendant's behavior in prison is admissible in capital sentencing because it bears upon his character. *State v. Stewart*, 283 S.C. 104, 320 S.E.2d 447 (1984). The State may establish as an aggravating factor that the defendant would in the future pose a danger to others if not executed. *State v. Patterson*, 290 S.C. 523, 351 S.E.2d 853 (1986), *vacated on other grounds*, 500 U.S. 950, 111 S.Ct. 2253, 114 L.Ed.2d 707 (1991) (*citing*

---

1. Appellant also argues this evidence does not fit within the five exceptions to inadmissibility set forth in *State v. Lyle*, 125 S.C. 406, 118 S.E. 803 (1923). *Lyle* is inapplicable here. Evidence admitted under *Lyle* is substantive evidence to establish guilt, not character evidence relevant to capital sentencing. *State v. Middleton*, 295 S.C. 318, 368 S.E.2d 457, *cert. denied*, 488 U.S. 872, 109 S.Ct. 189, 102 L.Ed.2d 158 (1988).

*Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976) *and Barefoot v. Estelle*, 463 U.S. 880, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983)). A defendant has the reciprocal right to present evidence he would adapt well to prison life. *Id.*

Here, the evidence appellant brutally killed one person and attempted to kill another while in prison was admissible as evidence of future dangerousness. Expert testimony appellant was mentally ill at the time and therefore acting "uncharacteristically" does not render evidence of his actions in prison inadmissible. The sentencing jury is charged with considering all possible relevant information about the individual defendant whose fate it must determine. *State v. Tucker (Tucker II)*, 324 S.C. 155, 173, 478 S.E.2d 260, 270 (1996), *cert. denied*, 520 U.S. 1200, 117 S.Ct. 1561, 137 L.Ed.2d 708 (1997). It was for the jury to weigh all the evidence regarding appellant's behavior to assess his character and propensity or lack of propensity for violence. *See State v. Nelson*, 331 S.C. 1, 501 S.E.2d 716 (1998) (generally in evidentiary law character refers to an individual's propensity).[2]

### 2) Nondisclosure of complete SLED summary

During the sentencing phase, appellant moved for a mistrial on the ground the State had failed to disclose, in violation of Rule 5, SCrimP, part of a report by the State Law Enforcement Division (SLED) concerning the April 12th jailhouse crimes. Specifically, counsel complained she had not received the first seventeen pages of a SLED investigative summary indicating three inmates gave statements that around the time of the stabbings appellant talked about seeing "a little green man." The State contended it was not required to disclose the summary because it was work product exempt under Rule 5. The trial judge denied a mistrial finding appellant was not prejudiced by the failure to disclose.

---

2. Appellant also relies on expert testimony he could not be held "criminally responsible" for the April 12th crimes because of his mental illness. Evidence of other crimes is admissible in sentencing to show the defendant's individual characteristics and predisposition to commit similar crimes, irrespective of conviction or a finding of criminal responsibility. *State v. George*, 323 S.C. 496, 476 S.E.2d 903 (1996), *cert. denied*, 520 U.S. 1123, 117 S.Ct. 1261, 137 L.Ed.2d 340 (1997).

■ Rule 5(a)(1)(C), SCrimP, exempts internal prosecution documents made in connection with an investigation. We need not determine here whether the report in question is exempt[3] since we agree with the trial judge's ruling that appellant has shown no prejudice from the failure to disclose. *See State v. Trotter,* 317 S.C. 411, 453 S.E.2d 905 (Ct.App. 1995) *aff'd in result* 322 S.C. 537, 473 S.E.2d 452 (1996) (violation of Rule 5 not reversible where no prejudice); *State v. Thompson,* 276 S.C. 616, 281 S.E.2d 216 (1981) (State's failure to disclose does not warrant reversal unless defendant deprived of a fair trial).[4]

The information regarding the inmates' statements was available to the defense before trial from the report of Dr. Morgan which refers to inmates Jennings's, Walker's, and Gaithers's statements regarding the "little green man." The trial judge had these three inmates transported to court during trial to be interviewed by defense counsel. Further, appellant's experts, Drs. Kohanski and Dupree, both testified they had information appellant told fellow inmates of "a little green man" talking to him. In conclusion, appellant was not prejudiced by the partial disclosure of the SLED investigative summary since the information was available from other sources.

### 3) Involuntary statements

■ In the guilt phase of trial, State witness Jennings, an inmate, testified he heard appellant tell a group of inmates: "The best feeling I ever had is when I killed that cop." State

---

3. *See State v. Gill,* 319 S.C. 283, 460 S.E.2d 412 (Ct.App.1995), *vacated on other grounds,* 327 S.C. 253, 489 S.E.2d 478 (1997) (summary report prepared by police for use in prosecuting case not subject to disclosure under Rule 5).

4. Appellant also claims a *Brady* violation but this issue was not raised below and is not preserved on appeal. *State v. Tucker (Tucker I),* 319 S.C. 425, 462 S.E.2d 263 (1995), *cert. denied,* 516 U.S. 1080, 116 S.Ct. 789, 133 L.Ed.2d 739 (1996) (defendant cannot argue one ground below and another on appeal). In any event, failure to disclose *Brady* material is reversible error only when its omission deprives the defendant of a fair trial. *State v. Gunn,* 313 S.C. 124, 437 S.E.2d 75 (1993), *cert. denied,* 510 U.S. 1115, 114 S.Ct. 1063, 127 L.Ed.2d 383 (1994). As discussed below, appellant can show no prejudice and therefore was not deprived of a fair trial.

witness Strain, a prison guard, testified he overheard appellant say to another inmate that "he was going to kill him another white boy." Appellant claims the trial judge erred in refusing to exclude these statements as involuntary because appellant was mentally ill at the time.

Absent coercive police conduct causally related to a confession, there is no basis for finding a confession constitutionally involuntary. A defendant's mental condition in and of itself does not render a statement involuntary in violation of due process. *Colorado v. Connelly*, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). Further, under State law, a confession is not inadmissible because of mental deficiency alone. *State v. Doby*, 273 S.C. 704, 258 S.E.2d 896 (1979), *cert. denied*, 444 U.S. 1048, 100 S.Ct. 739, 62 L.Ed.2d 735 (1980). Here, the only factor appellant relies on as evidence of involuntariness is his mental condition. The statements in question were spontaneously made and there is no evidence of police coercion. Since mental condition alone does not support a finding of involuntariness, this issue is without merit.

Appellant further contends these statements were untrustworthy because there was no corroborating evidence. He refers to our decision in co-defendant Forney's case where Forney sought admission of appellant's statements to show appellant was the triggerman. We held the exclusion of those statements proper because there was no corroborating evidence indicating their trustworthiness. *State v. Forney, supra.*

In Forney's case, however, these statements were hearsay statements against the penal interest of an unavailable declarant (appellant) which required corroboration to be admissible to exculpate the accused (Forney). *State v. Doctor*, 306 S.C. 527, 413 S.E.2d 36 (1992); *see also* Rule 804(b)(3), SCRE. In appellant's case, these statements were admissible as statements against his *own* interest and required no corroborating evidence. Rule 801(d)(2), SCRE.

### 4) Co-defendant's life sentence as mitigating factor

Appellant contends the trial judge erred in refusing his request to admit as mitigating evidence in the sentencing phase co-defendant Forney's life sentence. Forney received a

life sentence after the jury in his own capital case found an aggravating circumstance but failed to return a unanimous verdict of death. *See* S.C.Code Ann. § 16–3–20(C) (Supp. 1997) (defendant sentenced to life if no unanimous recommendation by jury). The trial judge found this evidence irrelevant. We agree.

■ In a capital case, the sentencer may not be precluded from considering as mitigating evidence (1) any aspect of the defendant's character or record and (2) any circumstances of the crime that may serve as a basis for a sentence less than death. *State v. Bell,* 305 S.C. 11, 406 S.E.2d 165 (1991), *cert. denied,* 502 U.S. 1038, 112 S.Ct. 888, 116 L.Ed.2d 791 (1992) (*citing Hitchcock v. Dugger,* 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987)). In *Bell,* we found evidence of a co-defendant's demeanor and record was properly excluded because it fit neither of these categories of mitigating evidence. Similarly, co-defendant Forney's life sentence does not qualify as mitigating evidence here. Forney's sentence does not demonstrate *appellant's* character or record, nor does it reveal anything about the circumstances of McCants's murder. Accordingly, this evidence was properly excluded. *State v. Charping,* 333 S.C. 124, 508 S.E.2d 851 (1998).

### 5) Proportionality

■ After the jury returned its recommendation of death, appellant moved for imposition of a life sentence on the ground a sentence of death would be disproportionate to Forney's life sentence. On appeal, he argues the trial judge's refusal to impose a life sentence violated his constitutional and statutory rights to a proportionate sentence.

■ Under State law, S.C.Code Ann. § 16–3–25(C)(3) (1985) requires this Court to determine in a death case "[w]hether the sentence of death is excessive or disproportionate to the penalty imposed in *similar cases,* considering both the crime and the defendant." (emphasis added). There is no requirement the sentence be proportional to any particular case. Death sentences have been imposed in other cases where, as here, the single aggravating circumstance was death of a police officer. *See State v. Johnson,* 306 S.C. 119, 410 S.E.2d 547 (1991), *cert. denied,* 503 U.S. 993, 112 S.Ct. 1691,

118 L.Ed.2d 404 (1992); *State v. South,* 285 S.C. 529, 331 S.E.2d 775, *cert. denied* 474 U.S. 888, 106 S.Ct. 209, 88 L.Ed.2d 178 (1985). Accordingly, appellant's sentence is not disproportionate under State law. Further, the Eighth Amendment requires no comparative proportionality review, *Pulley v. Harris,* 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984), and hence there can be no constitutional violation from the refusal to determine proportionality to a specific case.

Appellant further contends his death sentence is disproportionate to the degree of his moral culpability under *Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), because he was convicted of murder on a theory of accomplice liability and there is no evidence of his intent to kill. We note the United States Supreme Court specifically modified *Enmund* in *Tison v. Arizona,* 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987), wherein it held the *Enmund* culpability requirement is satisfied by major participation in the underlying felony combined with reckless indifference to human life.[5] *See also State v. Longworth,* 313 S.C. 360, 438 S.E.2d 219 (1993).

In any event, the sentence in this case does not rest on moral culpability established solely by accomplice liability. Statements by appellant admitted in the guilt and sentencing phases of trial indicated he was the triggerman. This evidence of direct moral culpability in the killing of Officer McCants supports the imposition of death based on the aggravating circumstance found by the jury.

### 6) Courtroom outburst

 In the sentencing phase, during cross-examination of appellant's medical expert, Officer McCants's mother loudly exited the courtroom followed by her sister. Appellant moved for a mistrial which was denied. The trial judge found that although Mrs. McCants's outburst could be interpreted as "a negative comment" on the defense evidence, her conduct was only momentarily disruptive and the jury already knew how she felt since she had testified as a victim impact witness.

---

**5.** The trial judge charged this language from *Tison* at the close of the sentencing phase.

■ The decision whether to grant a mistrial because of a witness's outburst rests within the sound discretion of the trial judge and will not be reversed absent an abuse thereof or manifest prejudice to the complaining party. *State v. Anderson,* 322 S.C. 89, 470 S.E.2d 103 (1996). In *Anderson,* we found no abuse of discretion in the denial of a mistrial where the outburst was limited and the jury likely understood it as an expression of grief over the victim's death. This case is similar. As noted by the trial judge, the jury was already aware of Mrs. McCants' feelings about the death of her son and likely understood her outburst as an expression of this grief. We find the trial judge did not abuse his discretion in denying a mistrial.

### 7) *Allen* charge

After deliberating at the close of the sentencing phase for four hours, the jury sent the trial judge a note stating they could not come to a unanimous decision. The trial judge gave a modified *Allen* charge [6] as follows:

Well, by law I cannot tell you where to go from here, but I can ask and make a suggestion that you continue deliberations in an attempt to reach a verdict. I can tell you all of you have a duty to consult with one another and to deliberate with a view to reaching an agreement, if this can be done without violence to any one of your individual judgments. Each of you as jurors must decide the case for yourself, but only after impartial consideration of the evidence with your fellow jurors. During the course of your continued deliberations each of you should not hesitate to re-examine your own views and change your opinion if convinced that your opinion is erroneous. *Each juror who finds himself or herself to be in the minority should reconsider their views in light of the opinions of the jurors of the majority and, conversely each juror finding themselves in the majority should give equal consideration to the views of the minority.* No juror, however, should surrender their honest conviction as to the weight or effect of the evidence

---

**6.** *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

solely because of the opinion of your fellow jurors or for the mere purpose of returning a unanimous verdict.

On appeal, appellant complains the underscored statement was not even-handed because it directs the minority to "reconsider" and the majority merely to "consider."

First, this ground for objection to the *Allen* charge was not raised below and is not preserved. *Tucker I, supra* (objection to *Allen* charge not preserved where different objection stated below). In any event, the charge specifically instructs the majority to give "equal consideration to the views of the minority." Taken as a whole, this charge is an even-handed admonition to both the minority and majority jurors.

Appellant also complains the trial judge coerced the jury's decision by sending a note asking whether they would like to continue deliberations that evening or break until morning. There is no indication appellant objected below and this issue is not preserved. *Tucker I, supra.* Further, this note was simply an inquiry as to the jury's wishes and conveyed no admonition to reach a verdict. This argument is without merit.

## PROPORTIONALITY REVIEW

We have reviewed the record and conclude imposition of death in this case was not the result of passion, prejudice, or any other arbitrary factor. Further, the evidence supports the aggravating circumstance and the death sentence is not excessive or disproportionate to the penalty imposed in similar cases. S.C.Code Ann. § 16–3–25(C) (1985); *see State v. Johnson, supra; State v. South, supra.* Accordingly, the judgment of the circuit court is

**AFFIRMED.**

FINNEY, C.J., TOAL, WALLER, and BURNETT, JJ., concur.