690 S.E.2d 62

**The STATE, Respondent,**

v.

**Charles Christopher WILLIAMS, Appellant.**

No. 26770.

Supreme Court of South Carolina.

Heard Sept. 17, 2008.
Decided Feb. 8, 2010.
Rehearing Denied March 25, 2010.

504

Deputy Chief Appellate Defender for Capital Appeals Rob-
ert M. Dudek, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy
Attorney General John W. McIntosh, and Assistant Deputy
Attorney General Donald J. Zelenka, all of Columbia, and
Solicitor Robert Mills Ariail, of Greenville, for Respondent.

Chief Justice TOAL:

In this capital murder case, Charles Christopher Williams (Appellant) appeals his sentence of death. Appellant argues (1) that once the jury disclosed its numerical division it was incumbent upon the trial judge to declare a mistrial; (2) that S.C.Code Ann. § 16-3-20 required the trial court to sentence Appellant to a life sentence because the jury could not agree on a sentence after "reasonable deliberation;" (3) the trial judge committed error by issuing a coercive *Allen* charge; and (4) the trial judge erred in refusing to declare a mistrial when a forensic psychiatrist's testimony impermissibly bolstered and vouched for the solicitor's decision to seek the death penalty. We disagree.[1]

## FACTS/PROCEDURAL HISTORY

Around 10:00 a.m. on September 3, 2003, Appellant entered a Bi-Lo grocery store in Greenville where his former girlfriend, Maranda Williams (Victim), worked. Appellant accosted Victim and forced her into an office in the bakery/deli. Victim called 911 from her cell phone. During the ninety-minute phone call, hostage negotiators tried to convince Appellant to release Victim. When Victim attempted to escape Appellant chased, shot, and killed her. Hearing the shots, law enforcement entered the store and apprehended Appellant. Shortly after his arrest, Appellant gave a statement in which he confessed to the crimes for which he was later charged.

Appellant was tried and found guilty of murder, kidnapping, and possession of a firearm during the commission of a violent crime. During the sentencing phase of the trial, the State sought to establish two statutory aggravating circumstances: (1) the murder was committed while in the commission of kidnapping; and (2) the offender by his act of murder knowingly created a great risk of death to more than one person in a public place by means of a weapon. S.C.Code Ann. § 16-3-20(C)(a)(1)(b), (C)(a)(3) (2003 & Supp.2007). As its primary witness, the State called Dr. Pamela Crawford. Dr. Crawford testified that she was associated with SLED and called by the

---

1. This case consolidates Appellant's direct appeal and the mandatory review provisions of S.C.Code Ann. § 16-3-25 (2003).

Greenville County Solicitor's Office within an hour and fifteen minutes of the crime to "provide assistance." [2]

Defense counsel objected to Dr. Crawford's testimony and argued that it amounted to expert testimony. The trial judge sustained the objection and gave a curative instruction telling the jury to disregard anything Dr. Crawford said about the death penalty.

The solicitor resumed his questioning of Dr. Crawford and asked, "[w]as the purpose of you interviewing the defendant to provide information to me in consideration of whether or not ___." Before the solicitor could finish the question, defense counsel again objected and the jury was sent out of the courtroom. Defense counsel renewed his objection and emphasized that Dr. Crawford had not been qualified as an expert but was giving testimony that she assisted the solicitor in whether to seek the death penalty. Defense counsel then moved to have Dr. Crawford excused as a witness. The solicitor stated he would withdraw the question. Defense counsel explained he believed the jury would think that the defense was hiding relevant evidence by objecting to Dr. Crawford's testimony. Defense counsel then moved for a mistrial. The trial judge reminded defense counsel that the question was withdrawn, but defense counsel responded with a demand for a mistrial.

The Court denied the motion for a mistrial. After a lunch break, Dr. Crawford was called back to the stand and defense counsel renewed the motion for a mistrial. The judge gave a curative instruction in which he told the jury that Dr. Crawford had not been qualified as an expert. Dr. Crawford then resumed her testimony.

Dr. Crawford testified that she interviewed Appellant for several hours at the Greenville County Law Enforcement Center.[3] According to Dr. Crawford, the primary purpose of

---

**2.** Dr. Crawford's employment by the Department of Mental Health required her to do a variety of things, including going on SWAT calls and providing assistance to prosecutors.

**3.** Dr. Crawford interviewed Appellant the evening of the crime and the next morning. Dr. Crawford and the investigating officers testified that Appellant was apprised of his rights prior to these interviews pursuant

this interview was to understand Appellant's state of mind at the time of the crime. At the outset of the interview, Dr. Crawford informed Appellant she was a forensic psychiatrist who worked for SLED and the solicitor's office, and any information she obtained could be used in court. Dr. Crawford also emphasized to Appellant that she was not his treating psychiatrist but would refer him to someone if she felt he needed treatment. Although Appellant was not very expressive during the interview, Dr. Crawford testified that Appellant was coherent and characterized his demeanor as calm, pleasant, and cooperative. During the interview, Appellant again confessed to murdering Victim and explained his feelings and the events leading up to the crime.

After motions, closing arguments, and charges, the jury deliberated from 3:50 p.m. to 7:00 p.m. on Friday, February 18, 2005. The jury resumed deliberations the next morning at 9:30. Shortly before 11:55 a.m., the foreman sent the trial judge a note which stated: "[the] jury is at 9 for death imposition, 3 for life imprisonment. Please refer to instruction about what procedure to follow to resolve."

The judge, out of the presence of the jury, indicated that he intended to give an *Allen* charge.[4] Defense counsel moved for a mistrial arguing that because the jury indicated its division as to a life versus death sentence the judge was required to end the jury's deliberations and impose a sentence of life without parole. The solicitor disagreed, noting the jury had voluntarily revealed its voting division, thus the judge was not required to impose a sentence of life imprisonment.

Defense counsel made a motion for a mistrial, motion to sentence Appellant to life imprisonment, and a motion to charge the defense's proposed *Allen* instruction. The trial judge denied all of defense counsel's motions. The trial judge then informed counsel that he intended to give the jury an *Allen* charge and would instruct them to continue their deliberations.

---

to *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

4. *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896) (establishing the charge used to encourage a deadlocked jury to reach a verdict).

After the judge issued an *Allen* charge, the jury resumed deliberations at 12:02 p.m. At 3:45 p.m., the jury returned to the courtroom after indicating they had reached a verdict. The jury found beyond a reasonable doubt that the murder was committed while in the commission of a kidnapping, and the jury recommended Appellant be sentenced to death. The trial judge then sentenced Appellant to death.[5]

## Standard of Review

"In criminal cases, the appellate court sits to review errors of law only. We are bound by the trial court's factual findings unless they are clearly erroneous." *State v. Wilson,* 345 S.C. 1, 5–6, 545 S.E.2d 827, 829 (2001) (citations omitted). "This Court does not re-evaluate the facts based on its own view of the preponderance of the evidence but simply determines whether the trial judge's ruling is supported by any evidence." *Id.* at 6, 545 S.E.2d at 829. "The admission or exclusion of evidence is left to the sound discretion of the trial judge, whose decision will not be reversed on appeal absent an abuse of discretion." *State v. Saltz,* 346 S.C. 114, 121, 551 S.E.2d 240, 244 (2001).

## Law/Analysis

### I. Jury's Disclosure of Vote Division

Appellant argues the trial judge erred in declining to sentence him to life imprisonment when the jury, by its written note, revealed it was divided nine to three in favor of death. Appellant contends that under these "unusual circumstances" giving the jury an *Allen* charge was impractical and coercive against the minority faction of the jury that opposed the death penalty. Ultimately, Appellant argues that once the jury disclosed its numerical division it was incumbent upon the trial judge to declare a mistrial. We disagree.

As a threshold matter, "[n]either the Due Process clause nor the Eighth Amendment forbid the giving of an *Allen* charge in the sentencing phase of a capital proceeding." *Tucker v. Catoe,* 346 S.C. 483, 490, 552 S.E.2d 712, 716 (2001)

---

5. At a post-trial hearing, the trial judge denied all of defense counsel's motions.

510

(citing *Lowenfield v. Phelps*, 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988); *Jones v. United States*, 527 U.S. 373, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999)). "The typical judicial mechanism for encouraging an indecisive jury is the *Allen* charge, in which jurors are instructed on, among other things, their duties to approach the evidence with an open mind and consider the opinions of their fellow jurors." *State v. Robinson*, 360 S.C. 187, 193, 600 S.E.2d 100, 103 (Ct.App.2004).

■ We find the trial judge's issuance of an *Allen* charge was not improper. Initially, we agree with Appellant that it is improper for a trial judge to inquire into the numerical division of a jury. *See State v. Middleton*, 218 S.C. 452, 457, 63 S.E.2d 163, 165 (1951); *Lowenfield*, 484 U.S. at 239–40, 108 S.Ct. 546 *Brasfield v. United States*, 272 U.S. 448, 450, 47 S.Ct. 135, 71 L.Ed. 345 (1926). However, these decisions are inapplicable in the instant case because the jury here voluntarily disclosed its numerical division and requested further instructions on how to proceed. The judge then promptly informed the attorneys of the jurors' numerical division and indicated that he could give an *Allen* charge. Unlike other cases, the trial judge did not inquire about the specifics of the jury's impasse. *See United States v. Brokemond*, 959 F.2d 206, 209 (11th Cir.1992) ("Unsolicited disclosure of the jury's division by a juror is not by itself grounds for a mistrial."). Therefore, we hold the trial judge committed no error in not declaring a mistrial and giving an *Allen* charge after the jury revealed it was divided nine to three in favor of death.

## II.  S.C.Code Ann. § 16–3–20

■ Appellant argues that S.C.Code Ann. § 16–3–20 required the trial court to sentence Appellant to a life sentence because the jury could not agree on a sentence after "reasonable deliberation." We disagree.

■ Section 16–3–20 provides in pertinent part:
If members of the jury after a reasonable deliberation cannot agree on a recommendation as to whether or not the death sentence should be imposed on a defendant found guilty of murder, the trial judge shall dismiss such jury and shall sentence the defendant to life imprisonment as provided in subsection (A).

S.C.Code Ann. § 16–3–20(C) (2003). A review of the pertinent statutory language in S.C.Code Ann. § 16–3–20(C) reveals the analysis of this issue is dependent upon an interpretation of "reasonable deliberation." Given the subjective nature of this term, this Court has been reluctant to define as a matter of law what constitutes "reasonable deliberation" sufficient to end the jury's deliberations and impose a life sentence. We note that "reasonable deliberation' is not simply an elapsed-time dependent determination," but rather is an issue "committed to the trial judge's discretion." *Tucker*, 346 S.C. at 489–90, 552 S.E.2d at 715.

Although we have not precisely defined "reasonable deliberation," our previous decisions make clear that here the trial judge did not abuse his discretion in permitting the jury to resume deliberations. In *Tucker*, this Court refused to determine as a matter of law that the jury had engaged in "reasonable deliberation" sufficient to require the trial judge to impose a life sentence. *Id.* at 490, 552 S.E.2d at 716. We found that the jury deliberated for a substantial period of time before informing the judge it was "hopelessly deadlocked," and that the jury took its responsibility seriously, diligently working to reach a verdict. *Id.* at 490, 552 S.E.2d at 715. Under those circumstances, had the "reasonable deliberation" issue been raised to him, the trial judge in his discretion "may or may not have found the jury had engaged in 'reasonable deliberation.' " *Id.* at 490, 552 S.E.2d at 716.

Here, the jury only deliberated about a lengthy capital murder trial for approximately five hours and thirty-five minutes before sending the note to the judge. However, unlike the jury in *Tucker*, this jury did not indicate it was deadlocked, but rather requested additional instructions to resolve their impasse. *Cf. State v. Robinson*, 360 S.C. 187, 193–94, 600 S.E.2d 100, 103 (Ct.App.2004) (concluding mistrial should have been granted after jury indicated it was again deadlocked after receiving *Allen* charge and that additional deliberation would not break deadlock). Thus, the jury's request was an indication that the jurors had not given up on reaching a verdict and that they anticipated further deliberations. Accordingly, we hold the trial judge properly permitted the jury to resume its deliberations and S.C.Code Ann. § 16–3–20 did not mandate a sentence of life imprisonment.

### III. *Allen* Charge Not Coercive

Alternatively, Appellant argues that the trial judge's *Allen* charge was unconstitutionally coercive. We disagree.

Because we find the trial judge properly charged Appellant's jury with an *Allen* charge, the question before us is whether the charge was coercive. "Whether an *Allen* charge is unconstitutionally coercive must be judged in its context and under all the circumstances.'" *Tucker*, 346 S.C. at 490, 552 S.E.2d at 716 (quoting *Lowenfield*, 484 U.S. at 237, 108 S.Ct. 546). This Court has explained:

> In South Carolina state courts, an *Allen* charge cannot be directed to the minority voters on the jury panel. Instead, an *Allen* charge should be even-handed, directing both the majority and the minority to consider the other's views. A trial judge has a duty to urge, but not coerce, a jury to reach a verdict. It is not coercion to charge every juror has a right to his own opinion and need not give up the opinion merely to reach a verdict.

*Green v. State*, 351 S.C. 184, 194, 569 S.E.2d 318, 323 (2002) (citations omitted).

In *Tucker*, we adopted the standard set by the United States Supreme Court in *Lowenfield* to determine whether an *Allen* charge is unconstitutionally coercive. In *Lowenfield*, the Supreme Court set forth the following factors to be considered:

> (1) the charge did not speak specifically to the minority juror(s);
>
> (2) the judge did not include in his charge any language such as "You have got to reach a decision in this case;"
>
> (3) there was no inquiry into the jury's numerical division, which is generally coercive; and
>
> (4) while the jury returned a verdict shortly after the supplemental charge, which suggests a possibility of coercion, weighing against this is the fact that trial counsel did not object either to the inquiry into whether the jurors believed further deliberation would result in a verdict, nor to the supplemental charge.

*Tucker*, 346 S.C. at 492, 552 S.E.2d at 716 (citing *Lowenfield*, 484 U.S. at 237, 108 S.Ct. 546).

Applying these factors, we found the *Allen* charge in *Tucker* was unconstitutionally coercive. *Id.* at 494, 552 S.E.2d at 718. Specifically, this Court concluded: (1) viewed as a whole, the jury charge was directed to the minority juror; (2) Tucker's jury was told of the importance of a unanimous verdict; (3) even though the jury informed the trial judge of their numerical split, the judge failed to instruct the jurors not to disclose their division in the future; and (4) Tucker's jury returned a verdict approximately an hour and a half after receiving the *Allen* charge. *Id.* at 492–94, 552 S.E.2d at 717–18.

In this case, defense counsel took exception to the judge's *Allen* charge on the ground that it deviated from counsel's proposed instruction. Defense counsel's proposed *Allen* charge stated:

By law I cannot tell you where to go from here, but I suggest that you continue deliberations in an attempt to reach a verdict. I can tell you that each of you have a duty to consult with one another and to deliberate with a view to reaching an agreement that does not do violence to any one of your individual judgments. Each of you as jurors must decide the case for yourself after impartial consideration of the evidence with your fellow jurors. During the course of your continued deliberations each of you should not hesitate to re-examine your own views and change your opinion if convinced that your opinion is erroneous. Each juror who finds himself or herself to be in the minority should consider their views in light of the opinions of the jurors of the majority. Those in the majority must consider their views in light of the minority. No juror should surrender their honest conviction for the mere purpose of returning a unanimous verdict.

In response to defense counsel's exceptions, the trial court noted that the charge issued covered "basically the same thing" as the submitted *Allen* charge. The trial judge also referenced counsel's concern that the jury be instructed that they should not surrender their convictions just to get a unanimous vote. The trial judge read the following portion of his original charge: "Ladies and gentlemen, you have stated you are unable to agree on a verdict in this case. As I instructed you earlier, the verdict of a jury must be unanimous." The judge then stated, "I am not going to charge

that. I'm taking that sentence out." The trial judge then instructed the jury:

Mr. Foreman, Ladies and Gentlemen of the jury, you've stated you've been unable to reach a verdict in this case. When a matter is in dispute, it isn't always easy for even two people to agree. So, when 12 people must agree, it becomes even more difficult. In most cases absolute certainty cannot be reached or expected. You should consult with one another, express your own views, and listen to the opinions of your fellow jurors. Tell each other how you feel and why you feel that way. Discuss your differences with open minds. Therefore, to some degree it can be said jury service is a matter of give and take.

Every one of you has the right to your own opinion, the verdict you agree to must be your own verdict, a result of your own convictions. You should not give up your firmly held beliefs merely to be in agreement with your fellow jurors. The minority should consider the majority's opinion and the majority should consider the minority's opinion. You should carefully consider and respect the opinions of each other and evaluate your position for reasonableness, correctness, and partiality. You must lay aside all outside matters and reexamine the question before you base[d][on] the law and the evidence in this case.

I, therefore, ask you to return to your deliberations with the hope that you can arrive at a verdict.

Defense counsel again objected to the trial judge's charge. Relying on this Court's opinion in *State v. Hughes*, 336 S.C. 585, 521 S.E.2d 500 (1999),[6] counsel claimed that his proposed charge "specifically identifies to the jurors that they have the right and specifically essentially an obligation to deal with their own views in this case and not to agree simply to agree." The trial judge denied counsel's motion and explained that his

---

**6.** In *Hughes*, this Court determined an *Allen* charge was an "even-handed admonition to both the minority and majority jurors" where it stated: "Each juror who finds himself or herself to be in the minority should reconsider their views in light of the opinions of the jurors of the majority and, conversely each juror finding themselves in the majority should give equal consideration to the views of the minority." *Hughes*, 336 S.C. at 597–98, 521 S.E.2d at 507.

charge covered defense counsel's concern by charging the jury to maintain their own convictions.

We find the *Allen* charge in the instant case was not coercive. First, unlike *Tucker*, the charge was not directed at the minority jurors. Instead, it evenly addressed both the majority and minority jurors and urged them to consider each other's views. *See Green*, 351 S.C. at 195, 569 S.E.2d at 323–24 (finding *Allen* charge was not coercive and did not focus on the position of the minority juror). Second, the trial judge's charge did not include language such as "You have got to reach a decision in this case." Rather, the charge instructed the jurors to resume their deliberations "with the hope you can arrive at a verdict." Third, there was no inquiry into the jury's numerical division. Here, without solicitation the jury disclosed its numerical division to the trial judge who then informed the trial attorneys. In contrast to *Tucker* where there was one holdout juror, the judge here did not direct his *Allen* charge to the three minority jurors despite his knowledge of the jury's numerical split. Finally, the jury deliberated for approximately three hours and forty-five minutes after being given the *Allen* charge, which was significantly longer than the *Tucker* jury. We believe the extended deliberations would appear to weigh against any allegation that the charge was coercive.

Viewing the *Allen* charge in the context of the specific circumstances of the case, we find it was not coercive.[7] Furthermore, a careful review of the trial judge's charge compared with defense counsel's proposed charge reveals the charge was a correct statement of the law and covered the substance of defense counsel's proposed charge. *See State v. Austin*, 299 S.C. 456, 458, 385 S.E.2d 830, 831 (1989) (stating, "[I]f the trial judge refuses to give a specific charge, there is

---

**7.** Although we find no reversible error in the *Allen* charge in this case, we take this opportunity to caution trial judges against using the following language: "with the hope that you can arrive at a verdict." Because jurors are not required to reach a verdict after expressing that they are deadlocked, we believe this language could potentially be construed as being coercive. Furthermore, to alleviate problems in future cases where the jury is deadlocked, we would advise trial judges to instruct the jurors not to disclose their numerical division.

no error if the charge actually given sufficiently covers the substance of the request.").

## IV. Dr. Crawford's Testimony

Appellant argues the trial judge erred in refusing to declare a mistrial because Dr. Crawford's testimony impermissibly bolstered and vouched for the solicitor's decision to seek the death penalty.[8] We disagree.

We find that there was nothing improper about the solicitor's examination of Dr. Crawford as a lay witness. Furthermore, to the extent there was any confusion among the jurors regarding Dr. Crawford's role as a lay witness, such confusion was effectively cured by the trial court's instruction to the jury.

Dr. Crawford was introduced to give fact testimony regarding her observation of Appellant's mental state within hours of Victim's murder. We have long held that a lay witness may testify as to a defendant's mental state. *See State v. Rimert,* 315 S.C. 527, 446 S.E.2d 400 (1994), *cert. denied,* 513 U.S. 1080, 115 S.Ct. 730, 130 L.Ed.2d 634 (1995) (where the State relied on lay testimony to establish defendant's sanity); *State v. Smith,* 298 S.C. 205, 379 S.E.2d 287 (1989) (holding that where defendant presents expert testimony regarding his insanity, the State may introduce lay testimony in rebuttal).

We recognize that while a witness of Dr. Crawford's professional expertise may in many cases be called upon to deliver expert testimony, the solicitor was not bound to call her in that capacity so long as her testimony was limited to lay

---

8. The question of whether the trial judge committed an abuse of discretion in denying Appellant's mistrial motion is preserved for our review. Appellant objected to Dr. Crawford's testimony before it was given and renewed this objection both during and after her testimony. Appellant moved for mistrial on these grounds, and the trial judge denied the motion. Appellant then sought to introduce a curative instruction, which the trial judge accepted. Under these circumstances, the trial judge's denial of the mistrial motion is properly preserved for appellate review. *See State v. Rogers,* 361 S.C. 178, 183, 603 S.E.2d 910, 912–13 (Ct.App.2004) (" 'There are four basic requirements to preserving issues at trial for appellate review. The issue must have been (1) raised to and ruled upon by the trial court, (2) raised by the appellant, (3) raised in a timely manner, and (4) raised to the trial court with sufficient specificity.' ") (quoting Jean Hoefer Toal et al., Appellate Practice in South Carolina 57 (2d ed. 2002)).

matters. The solicitor was justified in asking Dr. Crawford to observe Appellant's mental state subsequent to his arrest and in calling upon her to testify regarding her observations. Appellant had been duly informed of his rights under *Miranda*, and spoke with Dr. Crawford voluntarily. Dr. Crawford's testimony was reasonably limited to her factual observations over the course of the interview. In our view, Dr. Crawford was called as a lay witness to give lay testimony. There is no indication in the record that the jury's responsibility for determining Appellant's fate was diminished in any way by the solicitor's questioning of Dr. Crawford.

Even if Dr. Crawford's testimony was improper, any prejudice was cured by the jury instruction. Therefore, we find no error in the trial judge's denial of Appellant's motion for mistrial.

## PROPORTIONALITY REVIEW

Pursuant to S.C.Code Ann. § 16–3–25(C) (2003), we have conducted a proportionality review and find the death sentence was not the result of passion, prejudice, or any other arbitrary factor. Furthermore, a review of other decisions demonstrates that Appellant's sentence is neither excessive nor disproportionate. *See, e.g., State v. Tucker*, 324 S.C. 155, 478 S.E.2d 260 (1996).

## CONCLUSION

For the foregoing reasons, we hold (1) the trial judge committed no error in not declaring a mistrial and giving an *Allen* charge after the jury revealed it was divided nine to three in favor of death; (2) S.C.Code Ann. § 16–3–20 did not mandate a sentence of life imprisonment; (3) the trial judge's *Allen* charge was not coercive; and (4) the trial judge committed no error in refusing to declare a mistrial based on Dr. Crawford's testimony. The conviction and sentence below are therefore affirmed.

WALLER, and BEATTY, JJ., concur.

KITTREDGE, J., concurring except for Part IV in which he concurs in result only.

PLEICONES, J., concurring in a separate opinion.

Justice PLEICONES concurring:

I concur in the majority's decision to affirm here, but write separately to express my disagreement with Part IV of the majority's opinion. In my opinion, whether the trial judge committed an abuse of discretion in denying appellant's mistrial motion following improper questioning by the solicitor is not preserved for our review.

The sole issue regarding Dr. Crawford before the Court at this juncture is whether the trial judge should have granted a mistrial because of Dr. Crawford's penalty phase testimony. To explain why I do not believe this issue is preserved, I will quote liberally from the penalty phase transcript of the solicitor's questioning of Dr. Crawford:

Solicitor: And your employment with the Department of Mental Health is as what?

Answer: A forensic psychiatrist.

Solicitor: And, now, back on September the 3rd, did you have occasion at my request to come to Greenville, South Carolina?

Answer: Yes, I did.

Solicitor: As an employee of the Department of Mental Health?

Answer: That's correct.

Solicitor: And were you also in any way connected with any other state agency at that time?

Answer: Yes. The Department of Mental Health had what we call a memorandum of agreement with SLED, South Carolina Law Enforcement Division, where I was the consultant forensic psychiatrist for SLED.

Solicitor: Explain to the jury prior to September the 3rd of 2003, what the working relationship you had either with my office or other solicitors.

Answer: This was all through my work with Department of Mental Health, through the memorandum of agreement with SLED. I would do a variety of things. Some of the things I would do, for example, go on SWAT calls and assist with negotiations. But as far as your office and the solicitor's office is concerned, I would be called by a solicitor if, for example, there was some kind of alleged

crime of significant magnitude. And they would call me and ask me to come and provide assistance.

Solicitor: All right. What type of assistance in particular did I request from you in this particular case on September the 3rd?

Answer: In this particular case, and again I'm called by various solicitors throughout the state, and I'm only called when it's a case of a very severe nature. And typically it's when the death penalty may be considered. And I'm asked to assess—

Mr. Nettles: Objection. And I'm going to ask the jury be sent out.

The Court: Mr. foreman, members of the jury don't discuss the case. I'll get you back very shortly.

After an *in camera* discussion, the judge gave the following curative instruction, without objection from appellant, and the questioning continued:

The Court: Mr. foreman, ladies and gentlemen of the jury please disregard anything that she said that she may be asked to assess concerning the death penalty. Disregard that. That's not appropriate. We're not going there. Solicitor.

Solicitor: Let me clarify and go back. We were talking about what you had come to Greenville for. And as a result of coming to Greenville, did you in fact interview the defendant?

Answer: Yes, I did.

Solicitor: What was the purpose of you interviewing—

Mr. Nettles: Objection.

The Court: Hold on a second. Solicitor, you may lead her through these questions, please, sir, laying your foundation. You may lead her.

Mr. Ariail: Was the purpose of you interviewing the defendant to provide that information to me in consideration of whether or not—

Mr. Nettles: Objection. And I'm going to—

The Court: Hold on. Don't get into the facts. Come on up here for a second, both of you.

(bench conference held within the presence but outside the hearing of the jury.)

The Court: Mr. foreman, ladies and gentlemen, go to the jury room. Don't discuss the case please.

During the ensuing *in camera* discussion, the solicitor agreed to withdraw the question. One of appellant's attorneys requested a curative instruction, and was given an opportunity to write one for the trial judge's use. While that charge was being written, appellant's other attorney argued for a mistrial.[9] The judge denied the mistrial request, but gave the solicitor and Dr. Crawford strict instructions on the limits of permissible questions and answers. Following that, appellant renewed his mistrial motion. When the jury returned, they were given this curative instruction:

The Court: Mr. foreman, members of the jury, I told you this in the first phase of the trial. I'm going to tell you again. Whenever one of the attorneys makes an objection, they're merely telling the court that they do not think that's admissible under the rules of evidence or the rules of court. And it's my job to decide whether it's admissible or not admissible. I ask you to leave the courtroom so I can comment on the facts, because I'm not at liberty to comment on the facts when the jury is present.

I'm the one that asked you to leave the courtroom so I can be free with what I say to the attorneys and the questions I ask the attorneys. The attorneys are not trying to hide anything, they just have an opinion it's not admissible, and that's their job. You are not to consider anything for or against either one of the attorneys when they make objections as to the rules of evidence. That's the procedure we are going through, and that's the reason I've been running you in and out of the courtroom, so I would be free, not that the attorneys are hiding anything. You understand?

All right. Now, normally opinions are not given in a courtroom. However, opinions may be given in a courtroom by laypersons when they're based on the percep-

---

**9.** In my view, the better practice is to permit only one of the attorneys to object to evidence.

tions of a witness, such as, if someone is staggering and you smell alcohol on their breath, you have an opinion they're intoxicated, that's a lay opinion that may be admissible in a courtroom; or if it's going to be helpful for the jury to understand and does not require special skill, experience, or training.

An expert may give his opinion if they qualify when there's a scientifically, technical, or other specialized knowledge required for the jury to understand the question.

Now, in this particular case this witness has not been qualified as an expert. In order for an expert to give an opinion, they have to be qualified. And the court has to find that they're qualified. This witness has not been qualified as an expert and I'm going to tell you, you must disregard any suggestion either in the solicitor's questions or any answer that this witness has given an opinion of any kind in this case. She's going to be treated as a lay witness, not an expert.

Solicitor.

Appellant made no objection to the sufficiency of this instruction, but argues on appeal that the trial judge erred in failing to grant a mistrial. In my opinion, this issue is not preserved for appellate review. As the factual recital above demonstrates, appellant did not seek a mistrial when the solicitor first questioned Dr. Crawford about her consulting role, and her assessments in serious death-penalty type cases. Instead, appellant merely objected. The trial judge sustained the objection and gave a curative instruction, to which appellant did not object. Since appellant accepted this ruling and neither objected to the charge's sufficiency nor moved for a mistrial following it, no issue regarding these questions and answers are preserved for our review. *See, e.g., State v. George,* 323 S.C. 496, 476 S.E.2d 903 (1996).

When the solicitor resumed his improper questioning, the trial judge sustained the objection. One of appellant's attorneys sought a curative instruction; the other, a mistrial. Following the *in camera* arguments, the judge denied the second attorney's mistrial motion but then gave, again without objection, the curative instruction apparently drafted by the

other lawyer. Under these circumstances, the mistrial issue is not before us. *State v. George, supra; cf. State v. Patterson,* 337 S.C. 215, 522 S.E.2d 845 (Ct.App.1999) (mistrial motion arguably preserved where trial attorney specified he did not "waive" mistrial motion after hearing curative instruction). Here, appellant did not renew or reserve his mistrial motion after hearing the curative instruction drafted by his own attorney, apparently finding it sufficiently cured any prejudice from the solicitor's improper questioning. Accordingly, there is no mistrial issue before the Court.

Although I do not believe the mistrial issue is preserved, because it is addressed, and because I differ in my assessment, I comment briefly. The State's position is that Dr. Crawford was being offered merely as a "fact" witness. If this is so, then her education, her training, her profession, and her special relationship with the solicitor's office are irrelevant. The only reason to allow this background evidence is to enhance Dr. Crawford's credentials, that is, to permit the jury to view her testimony in light of her expertise. *Compare State v. Douglas,* 380 S.C. 499, 671 S.E.2d 606 (2009) (testimony from expert clothed "with an air of authority that does not attach to "ordinary witnesses" ") (Pleicones, J., dissenting).

Moreover, I do not understand why Dr. Crawford's testimony, offered allegedly to show appellant's mental state, was relevant in this penalty phase. The State sought to prove two aggravating circumstances, neither of which involved appellant's state of mind. Had appellant put his mental state at the time of the offense in issue, then Dr. Crawford's testimony as to her "lay" observations in the hours surrounding the offense would be relevant. Here, however, Dr. Crawford's testimony was offered only to bolster the solicitor's decision that this case warranted a death sentence. Unlike the majority, I do not see how the curative instruction negates the prejudice from Dr. Crawford's irrelevant yet prejudicial testimony.