HILL, J.:
**210 *725 Seven hours and twenty minutes into their deliberations following four days of trial, the jury in Billy L. Taylor's criminal trial informed the trial court they were at an impasse. The trial court sent the jury home for the night. The next morning, the trial court gave the jury a charge derived from Allen v. United States , 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). Taylor objected to the charge and moved for a mistrial. Two-and-a-half hours later the jury returned with a **211 guilty verdict. Taylor now appeals, contending his motion for a mistrial should have been granted, and the Allen charge was unconstitutionally coercive. We agree the Allen charge was coercive and reverse.
I.
Taylor was tried for the attempted murders of Brittany Jeeter and Ashley Hiott, the murder of Rodney Nesbit, and the possession of a weapon during the commission of a violent crime. The jury began deliberating at noon on the fourth day of trial, and soon the jury asked a question about the "hand of one, hand of all" charge. After further instruction, the jury resumed deliberations at 1:50 p.m. They returned to the courtroom at 7:20 p.m. after sending a note advising they were at an impasse. The note also contained an apparent tally of successive votes the jury had taken, indicating the latest vote was 10-2 in favor of conviction on the murder charge, 8-4 for conviction on the attempted murder charges, and 11-1 for conviction on the weapon charge. The trial court sent the jury home for the night. The next morning, the trial court gave the following charge:
Ladies and gentlemen, I recognize that last night you sent me a note that indicated that you were at an impasse and you told me the division that you had in that note as well.
Now, I understand that the decision that you have to make is very difficult. And when you get 12 people together, it's difficult to have 12 people agree. Particularly, when you come from different walks of life and you're just thrown together on a jury, it's difficult to make that decision. I know that, oftentimes, it's difficult for two people, just two people to make a decision. It's hard for my wife and I to figure out what we're going to eat for supper sometimes. So, this decision, I recognize is hard.
But understand that it's important that you come to a decision in this case. Understand that both the State and the Defense have extended significant resources and time and effort to get to this point. Also, know that the State and the County has extended resources to get to this point as well. And if you're unable to come to a verdict in this matter, then, essentially, we'd be left with having to do it all **212 over again, extending additional resources, time and effort. Now, ladies and gentlemen, I will tell you that there are no 12 other people in the County of Greenville who are more capable or competent to come to a decision in this matter than the 12 of you are.
Now, again, I understand it's hard to come to a decision. But those of you who are in the majority should listen to the people in the minority. Those of you who are in the minority should listen to the people in the majority. You should take into consideration your respective positions and you should come to a decision in this matter. Again, it really would be a waste of time, effort and resources for us to have to do all of those over again. So, I'm going to ask you to go back to your jury room and resume your deliberations. ...
After the jury left the courtroom at 9:10 a.m., Taylor moved for a mistrial and also objected to the Allen charge on the ground that it was unduly coercive. He asked the court to instruct the jurors that a hung jury was "a legitimate end of a criminal trial" and sometimes the result of the State's burden to prove its case beyond a reasonable doubt.
*726 The trial court denied Taylor's motions. The jury returned a guilty verdict at 11:43 a.m.
II.
A. Mistrial
We first address Taylor's argument that the trial judge abused its discretion by giving an Allen charge rather than declaring a mistrial. A trial court should declare a mistrial as a last resort, when all other alternatives have been exhausted. A mistrial is a drastic step, "an extreme measure which should be taken only where an incident is so grievous that the prejudicial effect can be removed in no other way." State v. Herring , 387 S.C. 201, 216, 692 S.E.2d 490, 498 (2009).
The trial court was well within its discretion in refusing to declare a mistrial simply because the jury, after some seven hours of deliberation, announced an impasse. We review the decision with deference to the trial court's superior position to observe the courtroom atmosphere, the jury's demeanor, and the tenor and rhythm of the trial. The trial **213 court has several ways to respond to a deadlocked jury, including delivering an Allen charge. In fact, the trial judge has a duty to urge the jury-without pressuring or coercing them-to reach a verdict. State v. Williams , 344 S.C. 260, 263, 543 S.E.2d 260, 262 (Ct. App. 2001). We find no error in the trial court's choice to deny Taylor's mistrial motion.
B. Allen Charge
According to Taylor, the trial court's Allen charge was coercive because it did not tell the jurors not to give up their honestly held beliefs simply to reach a verdict, it targeted the minority "holdout" jurors, and pressured them by stating a mistrial would be a waste of time and resources. He further complains the charge did not inform the jurors they have a right not to reach a verdict.
Because a criminal defendant's right to due process is violated by a charge that coerces a jury to reach a verdict, courts have long struggled with what to tell a deadlocked jury. The substance of the original Allen charge was described as instructing the jury that:
in a large proportion of cases absolute certainty could not be expected; that, although the verdict must be the verdict of each individual juror, and not a mere acquiescence in the conclusion of his fellows, yet they should examine the question submitted with candor, and with a proper regard and deference to the opinions of each other; that it was their duty to decide the case if they could conscientiously do so; that they should listen, with a disposition to be convinced, to each other's arguments; that, if much the larger number were for conviction, a dissenting juror should consider whether his doubt was a reasonable one which made no impression upon the minds of so many men, equally honest, equally intelligent with himself. If, [on] the other hand, the majority were for acquittal, the minority ought to ask themselves whether they might not reasonably doubt the correctness of a judgment which was not concurred in by the majority.
Allen , 164 U.S. at 501, 17 S.Ct. 154. The original Allen charge was upheld, but with time and experience courts questioned its latent coercive force, particularly when trial **214 judges tinkered with the original version. See United States v. McElhiney , 275 F.3d 928, 937-38 (10th Cir. 2001) (canvassing the history and evolution of Allen charge); United States v. Rogers , 289 F.2d 433, 435 (4th Cir. 1961) (Haynsworth, J.) (noting original Allen charge "approaches ultimate permissible limits"), abrogated on other grounds by Bell v. United States , 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983).
The United States Supreme Court continues to approve Allen -type charges, see Jones v. United States , 527 U.S. 373, 382 n.5, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999), but many states have banned the original Allen charge, with some embracing a charge developed by the American Bar Association (ABA) that must be given to juries before deliberation begins. Thomas & Greenbaum, Justice Story Cuts the Gordian Knot of Hung Jury Instructions , 15 Wm. & Mary Bill of Rts. J. 893, 914-16 (2007). Versions of the charge vary in the federal circuits, but all circuits allow them, though several recommend the *727 ABA version. See Lowenfield v. Phelps , 484 U.S. 231, 238 n.1, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988) ("All of the Federal Courts of Appeals have upheld some form of a supplemental jury charge.").
Although labelled the "dynamite" charge because of its proven ability to "blast a verdict out of a jury otherwise unable to agree," United States v. Bailey , 468 F.2d 652, 666 (5th Cir. 1972), the label could just as well describe the Allen charge's success in blowing up otherwise error-free trials by introducing volatile elements into the fluid and emotionally charged atmosphere prolonged jury deliberations often create. Like dynamite, the charge must be handled with extreme care.
South Carolina approves the use of a modified Allen charge, which must be neutral and even-handed, instruct both the majority and minority to reconsider their views, and cannot be directed at the jurors in the minority. Workman v. State , 412 S.C. 128, 130, 771 S.E.2d 636, 638 (2015) ; Green v. State , 351 S.C. 184, 194, 569 S.E.2d 318, 323 (2002). A trial judge has a duty to urge jurors to reach a verdict, but must do so in a way that does not coerce them, eroding their independence and impartiality. No set definition of coercion has emerged; instead, we detect its presence by viewing the charge in context and in light of four factors: (1) whether the **215 charge speaks "specifically to minority jurors"; (2) whether the charge includes "you must return a verdict" type language; (3) whether there was an "inquiry into the jury's numerical division," which is generally coercive; and (4) whether the time between when the charge was given and when the jury returned a verdict demonstrates coercion. See Tucker v. Catoe , 346 S.C. 483, 492-95, 552 S.E.2d 712, 717-18 (2001) (per curiam).
Like most multi-factor constructs, the Tucker test does not tell us the relative weight each factor carries, nor is the list of factors exclusive. Id. at 491, 552 S.E.2d at 716 (emphasizing the coercion inquiry "is very fact intensive"); Workman , 412 S.C. at 130, 771 S.E.2d at 638 (stating coerciveness must be gauged by context and circumstances).
As to the first Tucker factor, the charge did not in the abstract single out the minority jurors. We cannot rest on the abstract, however, and must examine the charge in the context and setting it was given. Under the circumstances here, analysis of this first factor is shaded by considerations related to the third factor's concern with knowledge of the jury's numerical split, which we will soon take up.
As to the second factor, the charge instructed the jurors "it's important that you come to a decision in this case," and "you should come to a decision in this matter." This skirts close to the language found coercive in Jenkins v. United States , 380 U.S. 445, 446, 85 S.Ct. 1059, 13 L.Ed.2d 957 (1965) (reversing and remanding case for a new trial because the charge told the jury "[y]ou have got to reach a decision in this case"). There is a glaring difference between the trial court's obligation to tell jurors they have a duty to attempt to reach a unanimous verdict and telling them they "should come to a decision." Our supreme court has even cautioned trial judges "against using the following language: 'with the hope that you can arrive at a verdict.' Because jurors are not required to reach a verdict after expressing that they are deadlocked, we believe this language could potentially be construed as being coercive." State v. Williams , 386 S.C. 503, 515 n.7, 690 S.E.2d 62, 68 n.7 (2010).
Because the trial judge is the authority figure in the courtroom, jurors look to the trial judge for guidance not only on **216 the law, but for matters such as courtroom conduct and protocol, even permission for breaks, meals, and telephone calls. Recognizing the enormous power such influence can wield and its capacity to compromise impartiality, our constitution forbids the trial judge from commenting on the facts. See S.C. Const., art. V, § 21 ("Judges shall not charge juries in respect to matters of fact, but shall declare the law."). It is precisely because jurors scrutinize the trial judge's statements and instructions-a scrutiny that becomes more acute amidst heated deliberations-that the trial judge should couch them in as neutral and dispassionate terms as language and context *728 permit. Even an otherwise benign remark, such as "you should come to a decision," could be interpreted by a rational juror that the trial judge believes the result is obvious, or at least capable of unanimous agreement. See Quercia v. United States , 289 U.S. 466, 470, 53 S.Ct. 698, 77 L.Ed. 1321 (1933) ("The influence of the trial judge on the jury 'is necessarily and properly of great weight' and 'his lightest word or intimation is received with deference, and may prove controlling.' ").
The third Tucker factor asks whether there has been inquiry into the numerical division of the jury. A trial court cannot, of course, ask the jury to reveal its division. State v. Middleton , 218 S.C. 452, 457-58, 63 S.E.2d 163, 165-66 (1951). Here the trial judge wisely did not inquire further into the specifics of the split when the jury volunteered its vote tally. The trial judge prefaced his Allen charge by acknowledging "you told me the division you had." So the jury knew the trial judge knew they stood 10-2 in favor of conviction on the murder charge and how they were divided on the others. This bears on our coercion analysis, for a jury laboring under such knowledge might interpret the trial judge's comments as aimed at the minority. See, e.g. , Brewster v. Hetzel , 913 F.3d 1042, 1054-55 (11th Cir. 2019) ("Pressure on jurors, especially on holdout jurors, is increased when the instructions to keep trying to reach unanimity come from a judge who knows how split the jury is and in which direction. ... The problem exists whether the judge asked for the information or the jury disclosed it without any prompting. If the jury is aware that the court knows it is divided in favor of convicting the defendant, and the court repeatedly instructs the jury to continue deliberating, the jurors in the minority may feel pressured to **217 join the majority in order to placate the judge."). It is not coercive to give an Allen charge simply because the jury volunteers how it is split, see Williams , 344 S.C. at 264-65, 543 S.E. 2d at 263, but the trial court's knowledge of the split is relevant. In Tucker , the jury twice informed the trial court of its numerical split before the Allen charge. 346 S.C. at 485-87, 552 S.E.2d at 713-14. The supreme court noted while the trial court did not actively inquire into the jury's division, it "failed to instruct the jurors not to disclose their division in the future." Id. at 494, 552 S.E.2d at 717. The court concluded "knowledge of the jury's numerical division combined with knowledge of its decisional disagreement, followed by an Allen charge directed, at least in part, to minority jurors, is impermissibly coercive." Id. at 494, 552 S.E.2d at 717-18.
During its instruction on the law after closing arguments, the trial court can instruct the jury that if it encounters division it should not disclose its numerical split. Williams , 386 S.C. at 515 n.7, 690 S.E.2d at 68 n.7 ("[T]o alleviate problems in future cases where the jury is deadlocked, we would advise trial judges to instruct the jurors not to disclose their numerical division."). Should the jury later report a deadlock and disclose its split, the trial court should tell the jury not to reveal its numerical division again and craft any Allen charge mindful of how it may be interpreted given the division. This makes an already subtle task even more delicate. See United States v. Vanvliet , 542 F.3d 259, 268 (1st Cir. 2008) (refusing to hold jury's volunteering of division reversible error; "Instead, the district court's knowledge of the numerical division of jurors ... might create a coercive situation if circumstances suggest that minority or 'holdout' jurors likely would infer that the court is directing the Allen charge specifically at them, and implying that they should vote with the majority to get the case settled expeditiously").
The fourth Tucker factor in determining whether an Allen charge is unconstitutionally coercive is whether the time between the charge and the verdict demonstrates coercion. This factor is notoriously difficult to apply without indulging in speculation given the secrecy of jury deliberations. Here, the jury returned its guilty verdict two-and-a-half hours later, which does not dispel the likelihood of coercion. We have no way of knowing what went on in the jury room, but we do **218 know that less than three hours after the Allen charge, the jury transformed from a body significantly divided on five serious felony charges involving multiple victims into one united by complete unanimity. Tucker *729 found a one-and-a-half hour interval suggested coercion when there was only one juror holding out, and (as here) the jury had been hung since late the previous afternoon. 346 S.C. at 494, 552 S.E.2d at 718.
The Tucker criteria have never been deemed comprehensive. The most troubling thing about the charge here is what it did not say: it did not tell the jurors they should not surrender their conscientiously held beliefs simply for the sake of reaching a verdict, an essential message that sometimes saves borderline charges from crossing the line into coercion. See Buff v. S.C. Dep't of Transp. , 342 S.C. 416, 423, 537 S.E.2d 279, 283 (2000) (finding trial court properly instructed a deadlocked jury by "inform[ing] the jury of the desirability of reaching a verdict ... yet remind[ing] the jury no juror should surrender his or her conscientious conviction simply to reach a unanimous verdict"); Blake by Adams v. Spartanburg Gen. Hosp. , 307 S.C. 14, 18, 413 S.E.2d 816, 818 (1992) ("[A] trial judge has the duty to ensure that no juror feels compelled to sacrifice his conscientious convictions in order to concur in the verdict."). Nor did the trial judge's initial charge at the end of the trial remind the jurors not to surrender their conscientious beliefs during deliberations. The original Allen charge included such a statement, and courts have routinely held its absence reversible error. See Note, Due Process, Judicial Economy & the Hung Jury: A Reexamination of the Allen Charge , 53 Va. L. Rev. 123, 128 (1967) ("Almost without exception the courts have required that the charge contain the statement that 'no juror should yield his conscientious conviction' or words to that effect."). The Fourth Circuit has observed that if the original Allen charge were "stripped of its complementary reminder that jurors were not to acquiesce in the views of the majority or to surrender their well-founded convictions conscientiously held, it might readily be construed by the minority of the jurors as coercive, suggesting to them that they should surrender their views in deference to the majority and concur in what really is a majority, rather than a unanimous, verdict." Rogers , 289 F.2d at 435 ; see also Smalls v. Batista , 191 F.3d 272, 279 (2d Cir.1999) ("[A] necessary **219 component of any Allen -type charge requires the trial judge to admonish the jurors not to surrender their own conscientiously held beliefs."); United States v. Scott , 547 F.2d 334, 337 (6th Cir. 1977) ("The reminder that no juror should merely acquiesce in the majority opinion is ... one of the most important parts of the Allen charge."); United States v. Mason , 658 F.2d 1263, 1268 (9th Cir. 1981) ("It is essential in almost all cases to remind jurors of their duty and obligation not to surrender conscientiously held beliefs simply to secure a verdict for either party.").
The charge here also overemphasized the cost and expense of a retrial. While it is not error to tell the jury that a retrial will be costly, see State v. Singleton , 319 S.C. 312, 316, 460 S.E.2d 573, 575-76 (1995), the Fourth Circuit has warned such statements are disfavored and should not be overbearing. United States v. Hylton , 349 F.3d 781, 788 (4th Cir. 2003) ; see also McElhiney , 275 F.3d at 945 (holding comments on cost of retrial can be coercive if overstressed). Also, telling the jury the case will "have" to be retried is misleading. A hung jury often acts as an alarm bell to all but the unthinking, awakening one side (sometimes both) to weaknesses in their case, which can lead to a plea deal rather than a retrial.
A trial court is not, however, required to advise the jury they have a right to not reach a verdict. See, e.g., United States v. Arpan , 887 F.2d 873, 876 (8th Cir. 1989) ; but see United States v. Manning , 79 F.3d 212, 222 (1st Cir. 1996) (requiring Allen charge to include instruction that jury has the right to fail to agree).
All of this adds up to the conclusion that the charge unduly pressured the jury. We are certain the trial court had the best intentions, but from our perspective the Allen charge was unconstitutionally coercive. We therefore reverse and remand this case for a new trial.
*730 REVERSED AND REMANDED.[1]
WILLIAMS and GEATHERS, JJ., concur.

We decide this case without oral argument pursuant to Rule 215, SCACR.