# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Petitioner,

v.

Charles Brandon Rampey, Respondent.

Appellate Case No. 2020-001595

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from Pickens County
Robin B. Stilwell, Circuit Court Judge

---

Opinion No. 28118
Heard May 19, 2022 – Filed October 5, 2022

---

## AFFIRMED

---

Attorney General Alan McCrory Wilson, Assistant
Attorney General Mark Reynolds Farthing, Senior
Assistant Deputy Attorney General William M. Blitch, Jr.,
of Columbia, and Solicitor William Walter Wilkins, III, of
Greenville, all for Petitioner State of South Carolina.

William G. Yarborough, III and Lauren Carole Hobbis,
both of William G. Yarborough III, Attorney at Law, LLC,
for Respondent Charles Brandon Rampey.

---

**JUSTICE HEARN:** In this criminal sexual conduct case with a minor, the trial judge gave an *Allen*[1] charge to the jury after approximately two hours and twenty minutes of deliberations. About an hour and fifteen minutes later, the jury returned with a not guilty verdict as to criminal sexual conduct with a minor (CSC) in the second degree and a guilty verdict as to CSC third degree. Appellant, Charles Rampey, appealed, asserting the *Allen* charge was unconstitutionally coercive. The court of appeals reversed the conviction in an unpublished opinion, primarily citing to *State v. Taylor*, 427 S.C. 208, 829 S.E.2d 723 (Ct. App. 2019), and we affirm.

## FACTUAL AND PROCEDURAL HISTORY

Victim, who was fifteen at the time of trial, alleged she was sexually assaulted on multiple occasions by Rampey, her stepfather, when she was eleven and twelve years old. Victim testified that sometime around her birthday in June of 2013, Rampey called Victim into a room and forced her to touch his penis. On another occasion, Victim testified that Rampey had her perform oral sex on him. This escalated to multiple instances of sexual intercourse, according to Victim.[2]

The defense called one witness, Rampey's niece, who was twelve years old at the time of trial. She testified she had been extremely close to Victim, and had considered her a sister. She testified that shortly before Victim disclosed the abuse to her grandmother, Victim confided she was considering telling a lie about Rampey in order to convince her mother that she should move in with her grandmother, who was a more lenient disciplinarian. On cross-examination, the State focused on the fact that the niece never mentioned that statement to law enforcement and only disclosed it after Rampey had been released on bond.

The jury deliberated for approximately two hours and twenty minutes, during which the jury sent the following questions to the judge: 1) whether it could review the transcript of Victim's testimony, 2) whether it could review the transcript of the doctor's report and testimony, 3) whether it could review the police reports, and 4) whether minors are subject to a lie detector test. The court informed the jury that while the audio of the testimony could be replayed, a transcript was not available. The court also noted that a lie detector test was not admissible. After returning to

---

[1] *Allen v. United States*, 164 U.S. 492 (1896).

[2] The State called a doctor at trial who performed the sexual assault exam, but she testified that she did not see any signs of sexual abuse, not altogether surprising since only approximately 3% of victims show signs of abuse according to her testimony.

deliberate, the jury informed the court that it was deadlocked, but the jury did not reveal the numerical split. The court then instructed the jury:[3]

> All right. Ladies and gentlemen, I've received your note and I sympathize with you. I recognize this is a difficult case and it's difficult to come to a resolution. It's hard enough for two people to agree on anything, so it's particularly difficult, oftentimes, for 12 people who have just met each other and have been thrust into a jury room to deliberate to agree on a verdict in the case. So I sympathize with you in that regard. I sympathize with you because I recognize this is a very difficult decision for each of you to make, both collectively and personally.
>
> But I do want to impress upon you that there have been many resources that's been brought to bear this week to bring this case to trial. The State of South Carolina, the County of Pickens, the parties to this case have expended substantial and significant resources to bring this case to trial. If you were to fail to come to a verdict in this case, then this case would simply have to be tried again. Twelve other people in the county of Pickens would come to trial and would hear the same witnesses, the same evidence, same arguments and would be tasked with deliberating on the case. Now, there are no 12 other people in the county of Pickens who are more capable, who are more able, who are more competent to reach a decision in this case than you are.
>
> Now, I recognize that it's a very difficult decision to make, but these parties deserve finality and they deserve a decision. So I would ask you to return to your jury room and continue deliberations. Those of you who may be in the minority, I would ask you to consider the position of the majority. Those of you who are in the majority, I would ask you as well to consider the position of the minority again and see if you can come to some resolution in this case. I know that's not what you wanted to hear when I brought you back out there, but again, this is important and a lot of resources have been expended to get to this point in time,

---

[3] While the giving of an *Allen* charge in this case appears somewhat premature and was not requested by either party, neither objected to the trial court doing so at the time.

And these parties deserve a verdict. So I ask you to return to your jury room and attempt to come to a verdict.[4] Thank you very much.

After the court gave this *Allen* charge, the jury exited the courtroom. Thereafter, defense counsel objected to the failure to include language instructing the jurors not to compromise their firmly-held beliefs. The court acknowledged it did not include that language; however, it declined to bring the jury back out for the requested instruction because of its concern that the jury would then think it did not have to reach a verdict.

The jury continued deliberating for approximately one hour and fifteen minutes before returning a verdict of not guilty as to CSC second but guilty as to CSC third. Before dismissing the jury, the court stated:

I am going to come back to the jury room and dismiss you less formally. But I know this was a hard verdict to arrive at. I also know that y'all took a lot of time and you were very conscientious about it.

I do want to ask you a question just to clear up the record to make sure this was a verdict at which you each arrived by a unanimous agreement. I gave you an *Allen* charge.[5] There was a question and there always is a question as to whether or not an *Allen* charge is coercive. So I'm going to ask you now and you can just show me by a show of hands, is there any one of this jury who feels as though you compromised a firmly-held position and simply agreed to go along with the remaining juries? [sic] (There was no response.).

---

[4] Though not raised by Rampey, we note the inherent problem created by the trial court's instruction to the jury that it should return to the jury room and attempt to come to a verdict without first waiting to hear if there was any objection to the *Allen* charge. As it happened, defense counsel raised a viable request that the trial court recall the jury and charge it that no member should sacrifice a firmly-held belief in order to arrive at a verdict, but the court, reluctant to interrupt the jury's deliberations, declined to do so. This was error, as due process requires affording the parties an opportunity to object to the initial charge or any subsequent instructions before the jury begins or resumes deliberating. *See* U.S. Const. amend. XIV, § 1 (guaranteeing due process of law); S.C. Const. art. I, § 3 (same).

[5] We note the trial court never identified the prior instruction as an *Allen* charge, so it is unclear if the jury knew what the court was referring to here.

Ultimately, the trial court sentenced Rampey to thirteen years imprisonment. After the court of appeals reversed the conviction, this Court granted the State's petition for certiorari.

## ISSUE

The sole issue before us is whether the *Allen* charge was unconstitutionally coercive.

## STANDARD OF REVIEW

We recognize that when reviewing jury charges for error, this Court considers the trial court's charge as a whole and in light of the evidence and issues presented at trial. *State v. Logan*, 405 S.C. 83, 90, 747 S.E.2d 444, 448 (2013). However, an *Allen* charge, due to its potential for coercion, must be viewed with a more heightened scrutiny than a general jury charge. *See State v. Taylor*, 427 S.C. 208, 214, 829 S.E.2d 723, 727 (Ct. App. 2019) ("A trial judge has a duty to urge jurors to reach a verdict, but must do so in a way that does not coerce them, eroding their independence and impartiality."). In *United States v. Bailey*, 468 F.2d 652, 666 (5th Cir. 1972), the federal court labeled it a "dynamite" charge because of its proven ability to "blast a verdict out of a jury otherwise unable to agree." And our court of appeals, citing to *Bailey*, has noted that "[l]ike dynamite, the charge must be handled with extreme care." *Taylor*, 427 S.C. at 214, 829 S.E.2d at 727. We thus scrutinize this charge with increased care and concern compared to our analysis of a general charge.

## DISCUSSION

The State argues that the court of appeals erred in reversing Rampey's conviction based on a purportedly coercive and unconstitutional *Allen* charge. It also contends that even if the trial court erred in its charge, it later removed any error with its informal polling of the jury following the verdict. We reject both contentions.

In determining the correctness of the court of appeals' decision to reverse, we analyze the charge pursuant to the factors set out in *Lowenfield v. Phelps*, 484 U.S.

231, 240 (1988)[6] and our case of *Tucker v. Catoe*, 346 S.C. 483, 492, 552 S.E.2d 712, 638 (2001), which adopted the *Lowenfield* factors. Those factors are:

> (1) Does the charge speak specifically to the minority juror(s)?
> (2) Does the charge include any language such as "You have got to reach a decision in this case"?
> (3) Is there an inquiry into the jury's numerical division, which is generally coercive?
> (4) Does the time between when the charge was given, and when the jury returned a verdict, demonstrate coercion?

*Workman*, 412 S.C. at 131, 771 S.E.2d at 638 (citing *Tucker*, 346 S.C. at 492, 552 S.E.2d at 716). Importantly, "[w]hether an *Allen* charge is unconstitutionally coercive must be judged 'in its context and under all the circumstances.'" *Tucker*, 346 S.C. at 491, 552 S.E.2d at 716 (internal citation omitted).

Here, the first and third factors favor the State because the trial court did not know the numerical split when the jury informed him it was deadlocked. The second *Tucker* factor supports Rampey because although the court did not tell the jury that it "had" to reach a verdict, the totality of the charge is certainly susceptible of that interpretation. For example, the trial court informed the jury "these parties deserve finality and they deserve a decision." The court reiterated this point towards the end of its charge, stating "[a]nd these parties deserve a verdict." To make sure, the trial court ended the charge with "I ask you to return to your jury room and attempt to come to a verdict." The State understandably focuses on the last sentence, specifically the word "attempt" to argue that the second factor does not favor Rampey. As noted by our court of appeals in *Taylor*: "There is a glaring difference between the trial court's obligation to tell jurors they have a duty to attempt to reach a unanimous verdict and telling them they 'should come to a decision.'" 427 S.C. at 215, 829 S.E.2d at 727. Despite this difference, this Court has cautioned that even language such as instructing the jury it should continue to deliberate "with the hope that you can arrive at a verdict" is problematic. *State v. Williams*, 386 S.C. 503, 516 n.7, 690 S.E.2d 62, 68 n.7 (2010) ("[W]e take this opportunity to caution trial judges

---

[6] In his dissenting opinion in *Lowenfield*, Justice Marshall memorably said this: "The Court's decision to condone the coercive practices at issue here renders hollow our pronouncement that 'the decision whether a man deserves to live or die must be made on scales that are not deliberately tipped toward death.'" 484 U.S. at 248 (Marshall, J., dissenting) (quoting *Witherspoon v. Illinois,* 391 U.S. 510, 521-22, n.20 (1968)).

against using the following language: 'with the hope you can arrive at a verdict.' Because jurors are not required to reach a verdict after expressing that they are deadlocked, we believe this language could potentially be construed as being coercive.").

We do not believe the trial court's use of the phrase "attempt to come to a verdict" saved the charge from being coercive. On no less than three separate occasions during the brief *Allen* charge, the trial court reminded the jury of the substantial resources spent in bringing the case to trial. The trial court stated: "But I do want to impress upon you that there have been many resources that's been brought to bear this week to bring this case to trial. The State of South Carolina, the County of Pickens, the parties to this case have expended substantial and significant resources to bring this case to trial."

In addition to these mentions of the considerable resources involved in bringing the matter to trial, the trial court stated a third time: "[B]ut again, this is important and a lot of resources have been expended to get to this point in time, and these parties deserve a verdict." While it is permissible in an *Allen* charge to note the expense of a retrial, the trial court overemphasized this consideration here. *See United States v. Hylton*, 349 F.3d 781, 788 (4th Cir. 2003) (noting that it is disfavored to emphasize the costs of a retrial but upholding the charge because the reference was brief and the overall charge was balanced). Additionally, because of the trial court's statement that "these parties deserve a verdict," we believe it important to remind the trial bench that in addition to a verdict of not guilty and guilty, a hung jury, resulting in a mistrial, is a third viable conclusion to a criminal trial. In sum, the multiple references to the "resources brought to bear" and the recurring refrain that the parties deserved finality is tantamount to "you've got to reach a verdict." Those repeated instructions, unaccompanied with the standard instruction not to surrender any strongly held view, lead us to find the second *Tucker* factor favors Rampey.[7]

---

[7] We reject the dissent's contention that we have "modified" the second *Tucker* factor to support our decision. While it is true the trial court did not specifically state that the jury "had" to reach a verdict, we believe the second factor is broader than the dissent apparently views it. Rather, the test is whether "the charge include[s] *any language such as* 'You have got to reach a decision in this case.'" *Workman*, 412 S.C. at 131, 771 S.E.2d at 638 (emphasis added). The use of the words "such as" is illustrative and not exhaustive. *See Bragdon v. Abbott*, 524 U.S. 624, 639 (1998) ("As the use of the term 'such as' confirms, the list is illustrative, not exhaustive."). Therefore, rather than quibbling over semantics, we conclude that the judge's charge

Concerning the fourth *Tucker* factor, our case law suggests the one hour and seventeen minutes of deliberation following the *Allen* charge weighs in favor of Rampey. *See Taylor*, 427 S.C. at 217, 829 S.E.2d at 728 (concluding the two-and-a-half hours of deliberations following the *Allen* charge "[did] not dispel the likelihood of coercion" where the jury deliberated for roughly ten hours overall); *Workman*, 412 S.C. at 132, 771 S.E.2d at 639 (finding the *Allen* charge unconstitutionally coercive where the jury deliberated for two hours after the *Allen* charge out of about six hours total); *U.S. v. Burgo*, 55 F.3d 933, 940 n.7 (4th Cir. 1995) ("[J]urors met for approximately four hours prior to the *Allen* charge, received the next day off, and then deliberated for approximately two hours before reaching a verdict. In light of our concerns with the *Allen* charge, we are not prepared to find that the additional two hours of deliberation were enough to offset the coercive nature of the charge."). To be sure, because the question before the Court is context specific, merely because there are cases finding an *Allen* charge unduly coercive where the jury deliberated for a longer period of time does not necessarily mean the timeframe here weighs in favor of Rampey. As the State highlights, approximately one-third of the deliberations occurred after the *Allen* charge, which could suggest the jurors were not coerced. Indeed, the overall length of the trial is consistent with the relative simplicity of the evidence offered. Essentially, despite Rampey's contention that the evidence was complex, this matter presented a credibility contest between Victim and the defense's theory of the case, which was that Victim concocted this story to enable her to move to her grandmother's home. It is clear the jury struggled to reach a decision here, as evidenced by its request to see the transcript of Victim's and the doctor's testimonies in addition to asking a question about whether minors are given a lie-detector test. Finally, the ultimate verdict could be construed as a compromise—acquitting Rampey of CSC second yet finding him guilty of CSC third—despite the Victim's testimony that they had sexual intercourse.

In reversing Rampey's convictions, the court of appeals cited to its prior decision in *Taylor* where this Court dismissed certiorari as improvidently granted. *State v. Taylor*, 430 S.C. 366, 845 S.E.2d 210 (2020). There, the court of appeals concluded the following *Allen* charge was improper:

> Ladies and gentleman, I recognize that last night you sent me a note that indicated that you were at an impasse and you told me the division that you had in that note as well.

here conveyed to the jury the clear impression that it should reach a verdict, which is sufficient to satisfy the second *Tucker* factor.

Now, I understand that the decision that you have to make is very difficult. And when you get 12 people together, it's difficult to have 12 people agree. Particularly, when you come from different walks of life and you're just thrown together on a jury, it's difficult for two people, just two people to make a decision. It's hard for my wife and I to figure out what we're going to eat for supper sometimes. So, this decision, I recognize is hard.

But understand that it's important that you come to a decision in this case. Understand that both the State and the Defense have [expended] significant resources and time and effort to get to this point. Also, know that the State and the County [have expended] resources to get to this point as well. And if you're unable to come to a verdict in this matter, then essentially, we'd be left with having to do it all over again, [expending] additional resources, time, and effort. Now, ladies and gentleman, I will tell you that there are no 12 people in the County of Greenville who are more capable or competent to come to a decision in this matter than the 12 of you are.

Now, again, I understand it's hard to come to a decision. But those of you who are in the majority should listen to the people in the minority. Those of you who are in the minority should listen to the people in the majority. You should take into consideration your respective positions and you should come to a decision in this matter. Again, it really would be a waste of time, effort and resources for us to have to do all of [this] over again. So, I'm going to ask you to go back to your jury room and resume your deliberations. . . .

*Taylor*, 427 S.C. at 211-12, 829 S.E.2d at 725-26. The court of appeals in *Taylor* stated the first and third *Tucker* factors weighed against the State because the jury informed the trial court of its numerical split. Additionally, the trial court's charge that "it's important that you come to a decision in this case" and "you should come to a decision in this matter" skirted close to the language found coercive in *Jenkins v. United States*, 380 U.S. 445, 446 (1965) (reversing and remanding the case for a new trial because the charge told the jury "[y]ou have got to reach a decision in this case."). Further, in *Taylor*, the two-and-a-half hours of deliberation following the *Allen* charge did not remove the likelihood of coercion. The court of appeals also noted the trial court in *Taylor* overemphasized the cost of a retrial and further stated that "[t]he most troubling thing about the charge here is what it did not say: it did

not tell the jurors they should not surrender their conscientiously held beliefs simply for the sake of reaching a verdict, an essential message that sometimes saves borderline charges from crossing the line into coercion." *Taylor*, 427 S.C. at 218, 829 S.E.2d at 729.

While the *Allen* charge in *Taylor* and this case are strikingly similar, we agree with the State that the charge in this case, when analyzed pursuant to the *Tucker* factors, is not as coercive as that in *Taylor*. However, both charges suffer from a serious flaw in that they fail to tell jurors not to surrender their conscientiously-held beliefs for the sake of a verdict. This language is one of the hallmarks of a typical *Allen* charge. *See* George C. Thomas III & Mark Greenbaum, *Justice Story Cuts the Gordian Knot of Hung Jury Instructions*, 15 Wm. & Mary Bill of Rts. J. 893, 916 (2007) (surveying model *Allen*-type charges across the country and noting "[p]erhaps the only thing that all of the states have in common is that each of their instructions includes language that cautions jurors not to acquiesce during deliberations"); *see also Blake by Adams v. Spartanburg Gen. Hosp.*, 307 S.C. 14, 18, 413 S.E.2d 816, 818 (1992) ("[A] trial judge has the duty to ensure that no juror feels compelled to sacrifice his conscientious convictions in order to concur in the verdict."); *Smalls v. Batista*, 191 F.3d 272, 279 (2d Cir. 1999) ("[A] necessary component of any *Allen*-type charge requires the trial judge to admonish the jurors not to surrender their own conscientiously held beliefs."); *United States v. Scott*, 547 F.2d 334, 337 (6th Cir. 1977) (noting that "an ultimate jury disagreement is a permissible result of a trial" and "[t]he reminder that no juror should merely acquiesce in the majority opinion is therefore one of the most important parts of the Allen [sic] charge").[8] Accordingly, despite the fact that this charge may be less coercive than the charge in *Taylor*, it nevertheless fails since the trial court overemphasized the resources expended in bringing the matter to trial and did not instruct the jury that no juror should surrender his or her conscientiously held beliefs simply for the sake of reaching a verdict.

---

[8] We disagree with the dissent that we have fundamentally changed the law on *Allen* charges. As we note above, it is inescapable that the language requested by defense counsel is critical when determining whether such a charge crosses the line and becomes unconstitutional. While the *Tucker* factors are the lodestar of our analysis, it is equally true these factors do not represent an exhaustive list; nor could they since "[t]he test for determining whether a given charge is unconstitutionally coercive is very fact intensive." *Tucker*, 346 S.C. at 491, 552 S.E.2d at 716. Because our inquiry is so fact intensive, it does not lend itself to a rigid implementation of *Tucker*.

In the alternative, the State argues that even if the *Allen* charge is unconstitutionally coercive, any error is harmless because the trial court collectively polled the jury following the verdict and confirmed that none of the jurors were coerced into reaching a decision. The State cites no authority that a coercive *Allen* charge can be "cured" in this way, and we decline to adopt this principle.

## CONCLUSION

We agree with the court of appeals that the *Allen* charge given in this case suffers from the same flaws as the charge in *Taylor*. The trial court's overemphasis of the resources expended and the need for a verdict, combined with the absence of the critical cautionary language despite being requested by defense counsel, renders the charge unconstitutional and warrants a new trial. Moreover, the post-verdict polling of the jurors by the trial court did not cure this error.

**AFFIRMED**.

**KITTREDGE, Acting Chief Justice, JAMES, J., and Acting Justice James E. Lockemy, concur. FEW, J., dissenting in a separate opinion.**

**JUSTICE FEW:**  This was not a good effort at an *Allen* charge, to be sure, but it was not an unconstitutionally coercive charge.  The court of appeals reversed Rampey's conviction on the basis of *State v. Taylor*, 427 S.C. 208, 829 S.E.2d 723 (Ct. App. 2019).  *State v. Rampey*, Op. No. 2020-UP-245 (S.C. Ct. App. filed Aug. 19, 2020).  As I will explain, however, the *Allen* charge in this case bears little relationship in its coercive qualities to the charge found unconstitutional in *Taylor* or in any other case in which we have found an *Allen* charge unconstitutionally coercive.  I believe the court of appeals was incorrect to rely on *Taylor* and the majority in this case has fundamentally changed the law on *Allen* charges.  I respectfully dissent.

First, I agree with the majority the trial court should have granted Rampey's request to instruct the jurors not to surrender their conscientiously-held beliefs.  Had the trial court granted Rampey the opportunity to be heard before allowing the jury to resume deliberations, *see supra* note 4, perhaps the decision to grant this eminently reasonable request would have been easier to make.

Turning to what was formerly the law in analyzing the coerciveness of an *Allen* charge, in *Taylor*, the court of appeals recited the four factors this Court stated were to be used in determining whether an *Allen* charge was unconstitutionally coercive, calling it "the *Tucker* test."  427 S.C. at 214-15, 829 S.E.2d at 727 (citing *Tucker v. Catoe*, 346 S.C. 483, 492-95, 552 S.E.2d 712, 716-18 (2001)); *see also Workman v. State*, 412 S.C. 128, 130-31, 771 S.E.2d 636, 638 (2015) (discussing the same four factors).  In this case, as the majority acknowledges, "the first and third factors favor the State."  *See Workman*, 412 S.C. at 131, 771 S.E.2d at 638 (stating the first and third factors as "(1) Does the charge speak specifically to the minority juror(s)?" and "(3) Is there an inquiry into the jury's numerical division . . . ?").

The second *Tucker* factor is whether the charge includes mandatory language such as "you must reach a verdict."  *See Workman*, 412 S.C. at 131, 771 S.E.2d at 638; *Tucker*, 346 S.C. at 493, 552 S.E.2d at 717; *Taylor*, 427 S.C. at 215, 829 S.E.2d at 727.  The *Allen* charge in this case does not contain mandatory language.  The trial court told the jury the parties "deserve finality" and "deserve a decision."  While I do not encourage trial courts to use these true statements in future *Allen* charges, the statements were not coercive.  *But see State v. Williams*, 386 S.C. 503, 515 n.7, 690 S.E.2d 62, 68 n.7 (2010) (stating "we . . . caution trial judges against using the following language: 'with the hope that you can arrive at a verdict'"); *Tucker*, 346 S.C. at 493, 552 S.E.2d at 717 (stating "While no such mandatory language was used here, petitioner's jury was told of the importance of a unanimous verdict").  In my

opinion, the second *Tucker* factor does not support a finding of unconstitutional coercion.

The fourth *Tucker* factor also does not support a finding of unconstitutional coercion. *See Workman*, 412 S.C. at 131, 771 S.E.2d at 638 (stating the fourth factor as "Does the time between when the charge was given, and when the jury returned a verdict, demonstrate coercion?"). The majority agrees this factor does not demonstrate coercion. In *Taylor*—a case involving multiple charges against multiple defendants in which it took the State two full days to present its evidence—"the jury returned its guilty verdict two-and-a-half hours later," yet the court of appeals stated only that the time period "does not dispel the likelihood of coercion." 427 S.C. at 217, 829 S.E.2d at 728. This case—no less important—involved only one charge against one defendant and it took the State less than three hours to present all of its evidence. The one hour and seventeen minutes of deliberation after the *Allen* charge in this case does not "demonstrate coercion" but rather demonstrates deliberation.

In prior cases, following the guidance of the Supreme Court of the United States, we established the four-factor *Tucker* test for determining whether an *Allen* charge was unconstitutionally coercive. As the court of appeals noted in *Taylor*, "the *Tucker* test does not tell us the relative weight each factor carries, nor is the list of factors exclusive." 427 S.C. at 215, 829 S.E.2d at 727. It would seem, however, that at least one of the *Tucker* factors should support a finding of unconstitutional coercion before we reverse the verdict of a jury and grant a new trial. Here, the majority had to modify the second factor to find that even one of the *Tucker* factors supports its decision. In addition, the majority relies on two new factors not listed in *Tucker* and never before used as the exclusive basis for reversing a conviction on the basis of an unconstitutionally coercive *Allen* charge. The majority states,

> Accordingly, despite the fact that this charge may be less coercive than the charge in *Taylor*, it nevertheless fails since the trial court overemphasized the resources expended in bringing the matter to trial and did not instruct the jury that no juror should surrender his or her conscientiously held beliefs simply for the sake of reaching a verdict.

We now have a new six-factor "*Tucker*/*Rampey*" test.[9]

---

[9] We also have a new standard for reviewing alleged constitutional violations in a jury charge. *See supra* majority, at 5 ("However, an *Allen* charge, due to its potential for coercion, must be viewed with a more heightened scrutiny than a general jury charge."). It is not clear whether this "heightened scrutiny" applies to other constitutional violations, or if it does not, why the "potential for coercion" in an *Allen* charge is given this elevated status when other constitutional claims are not.